Robert **CRAIG**, as Co–Liquidator of Alpine Assurance Co., Inc., Plaintiff–Counter–Defendant–Appellant,

**Amarilis Black, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

v.

The **BANK OF NEW YORK** Defendant–Counter–Claimant–Appellee.

Nos. 01–7631(L), 02–7870(CON).

United States Court of Appeals, Second Circuit.

March 6, 2003.

---

Robert L. Brace, Hollister & Brace, Santa Barbara, CA, for Appellants Robert Craig and Amarilis Black, et al.

Leo T. Crowley (Daniel Z. Mollin, on the brief), Pillsbury Winthrop LLP, New York, NY, for Appellee The Bank of New York.

Present: WALKER, Chief Judge, JACOBS, and SACK, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND **DECREED** that the judgment of said district court be and it hereby is **AFFIRMED.**

Plaintiffs Robert Craig and Amarilis Black appeal from a judgment entered on May 2, 2001 by the District Court of the Southern District of New York (Shira A. Scheindlin, *District Judge*), granting summary judgment for defendant, The Bank of New York ("BNY"). For the reasons stated below, we affirm.

On August 15, 1991, BNY entered into a National Association of Insurance Commissioners ("NAIC") standard trust agreement ("the Agreement") with Alpine, an off-shore insurance company incorporated in Turks and Caicos Islands. Under the terms of the trust, BNY was to serve as trustee, and Alpine was required to fund the trust with no less than $5.4 million, which could consist of any combination of cash, readily marketable securities, or letters of credit. Alpine deposited with BNY a certain number of shares of Monoclonal Medical Inc. and Creative Classics International, which Alpine represented to have an aggregate value of $5.4 million. Approximately one month after BNY received the shares, BNY requested that its attorneys, Emmet, Marvin & Martin ("EMM"), confirm that the stock was qualified to fund the trust. EMM concluded that the stocks were not readily marketable securities, and advised BNY of that fact. EMM also advised BNY that, because Alpine had provided inadequate funding, no trust was ever created and that, therefore, BNY could resign as trustee without complying with the various resignation requirements set forth in the Agreement. BNY notified Alpine of its resignation, and specifically informed Alpine that, because no trust had been created, it would not appoint "a Successor Trustee or [ ] deliver[ ] [the trust] to the Domiciliary Commissioner or [ ] a court of

proper jurisdiction," as required by ¶ 3.9 of the Agreement.

Plaintiffs allege that BNY breached the provisions of the Agreement and, as trustee, breached its fiduciary obligations to the beneficiaries of the trust. Defendant BNY argues, *inter alia*, that it relied in good faith on the advice of its counsel in its decision to resign without following the formalities required by ¶ 3.9 of the Agreement and hence that it cannot be held liable as Trustee. We agree.

Paragraph 3.6 of the Agreement provides that BNY, as trustee, "may consult with counsel selected by it and may rely on said counsel's opinion as complete authority in respect of any action taken or omitted by the Trustee in good faith in accordance with said opinion and the Trustee shall be deemed to have exercised reasonable due care in reliance thereon." Where an agreement provides that reliance on advice of counsel is a defense to liability, such reliance can provide a basis for summary judgment. *See Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir.1992).

In the instant case, there is no dispute that BNY was advised by its counsel that, because Alpine deposited non-conforming assets, no trust fund had been created, and that therefore BNY need not comply with the resignation procedures required by the Agreement. Plaintiffs contend, however, that BNY's reliance on this advice was in bad faith. Plaintiffs have put forward no evidence of BNY's actual motive for relying on EMM's advice. Instead, they simply cite testimony by expert witnesses who understood that BNY could avoid liability and costs by following EMM's advice. This evidence is insufficient to establish a question of fact regarding BNY's good faith because these witnesses lack personal knowledge of BNY's actual motives. Moreover, even assuming arguendo that a party's desire to avoid liability prompted reliance upon the advice of counsel, that

fact alone would not create a triable issue of fact with respect to good faith reliance on advice of counsel. Were that the case, the advice of counsel defense could almost never provide a basis for summary judgment, contrary to our holding in *Cruden*. *See* 957 F.2d at 972.

We have considered plaintiffs' other arguments and find them to be without merit. Accordingly, the judgment of the district court is hereby **AFFIRMED.**